IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────────

MELVIN D. GILLEN,

                Plaintiff,                      OPINION & ORDER

v.

                                                        13-cv-373-wmc

KOHN LAW FIRM S.C.,

                Defendant.
───────────────────────────────────────────────────────────────

    *Pro se* plaintiff Melvin D. Gillen brought this suit against defendant Kohn Law Firm S.C. ("Kohn"), alleging that the firm violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Wisconsin Consumer Act ("WCA"), Wis. Stat. § 421 *et seq.* About a year over, Kohn moved for summary judgment on all of Gillen's claims. (Dkt. #28.) For the reasons discussed below, the court will now enter summary judgment in Kohn's favor.

UNDISPUTED FACTS

    Kohn is a law firm with twelve licensed attorneys on staff and, as an entity, it is also a debt collector within the meaning of the FDCPA and WCA. On March 1, 2013, Capital One Bank (USA), N.A., placed a delinquent credit card account with Kohn for collection. The account was owned and serviced by Capital One, and it has never been assigned to a third-party entity.

    On March 5, Kohn mailed its initial dunning letter to Gillen. Gillen actually received this letter. The next day, on March 6, Kohn obtained a copy of Gillen's credit report. One of Kohn's attorneys, David Ambrosh, avers that the firm did so in order to collect on the delinquent credit card account and for no other purpose.

On March 11, Gillen sent Kohn a letter requesting validation of the debt. Kohn received Gillen's letter on March 13. The next day, Kohn mailed a letter to Gillen, attaching 154 pages of credit card statements related to the account. Those statements: covered the period from October 11, 2009, through January 10, 2013; set forth the account number, name and address of the creditor; and included a detailed summary of all transactions. Gillen avers, however, that the version he received was missing the statement for August of 2010 and that there was also information missing for June/July of 2010 and December of 2009. The final billing statement reflected the same balance as Kohn's dunning letter of March 5 -- a total of $18,406.45.

On April 22, 2013, Kohn filed a lawsuit against Gillen on behalf of Capital One, which sought a money judgment for this credit card balance. Gillen was personally served on May 7, and he filed an answer on June 24, generally denying the allegations of Capital One's lawsuit and affirmatively alleging that Capital One had failed to attach to its complaint the signed, written agreement.

On August 6, Kohn filed a motion for summary judgment, supported by an affidavit from a Capital One representative and copies of the credit card statements. Gillen responded on September 24, attacking the sufficiency and validity of Capital One's affidavit and supporting documentation. On November 20, the circuit court judge issued a decision, holding that the affidavit and documentation was properly submitted and satisfied Capital One's burden of proof. Accordingly, the judge granted summary judgment for Capital One. Gillen did not appeal that judgment.

Finally, in conclusory fashion, Attorney Ambrosh avers that throughout Kohn's collection attempts, Kohn never used any false, misleading or unconscionable practices or

made false representations; never falsely represented the character, amount or legal status of the account; never falsely represented that a communication was from an attorney; never threatened to take action that could not legally be taken; never communicated false credit information; never attempted to collect unauthorized amounts; and never filed lawsuits with knowledge that it had no right to do so. Based on his own affidavit challenging Kohn's verification of the debt as legally insufficient, Gillen purports to dispute these representations.

OPINION

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the initial burden is met, for an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

3

475 U.S. 574, 586 (1986). Rather, the nonmoving party must produce "evidence . . . such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If he fails to do so, "[t]he moving party is 'entitled to a judgment as a matter of law.'" *Celotex* at 323.

Here, Gillen has essentially pled two claims, framed as three "counts" under three sources of law, against Kohn: (1) failure to verify a debt upon request before continuing collection efforts; and (2) acquisition of his credit report for an impermissible purpose. The court considers each "count" in turn.

I. **Fair Debt Collection Practices Act**

   A. **Theories Not Sufficiently Pled**

"Count I" of Gillen's complaint alleges various violations of nine separate provisions of the FDCPA. Kohn challenges eight of them on the basis that they fail to state a claim for relief -- essentially a motion for judgment on the pleadings, although presented in the context of its summary judgment motion. A motion for judgment on the pleadings is reviewed under the same sufficiency standard as a Rule 12(b) motion to dismiss. *Loud Records LLC v. Minervini*, 621 F. Supp. 2d 672, 676 (W.D. Wis. 2009). Thus, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Loud Records*, 621 F. Supp. 2d at 676. As with a Rule 12(b) motion to dismiss, however, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Here, the court agrees with Kohn that eight of the nine sections of the FDCPA that Gillen invokes are merely conclusory statements of the law. He has pled *no* facts in support of his allegations that:

- Kohn generally used false, deceptive or misleading representations in connection with the collection of the debt (15 U.S.C. § 1692e);

- Kohn falsely represented the character, amount or legal status of the debt (15 U.S.C. § 1692e(2));

- Kohn falsely represented that one of its communications was from an attorney (15 U.S.C. § 1692e(3));

- Kohn threatened to take action that could not legally be taken (15 U.S.C. § 1692e(5));

- Kohn communicated false credit information, including its failure to communicate that a disputed debt was disputed (15 U.S.C. § 1692e(8));

- Kohn used false representations or deceptive means to collect the debt (15 U.S.C. § 1692e(10));

- Kohn used unfair or unconscionable means to collect the debt (15 U.S.C. § 1692f);

- Kohn attempted to collect an amount not authorized by an agreement creating the debt or permitted by law (15 U.S.C. § 1692f(1)).

To the extent that Gillen now attempts to allege additional facts bolstering those claims in his brief opposing summary judgment (*see, e.g.*, Pl.'s Br. Opp'n (dkt. #44) ¶¶ 11-12, 14), the Seventh Circuit has definitively foreclosed that possibility: "a plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'" *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (quoting *Grayson v.*

*O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)). Accordingly, Kohn is entitled to dismissal of any FDCPA claims predicated on the above conclusory claims.

Furthermore, even if Gillen *had* adequately pled facts to support these eight theories, he has failed to presented sufficient evidence to survive summary judgment on any of them. In fact, the only evidence he submits in support of his claimed violations of these eight sections of the FDCPA is his affidavit. The court briefly reviews each of those five statements. *First*, he avers Kohn falsely represented that Gillen had a contractual obligation to pay Kohn, rather than Capital One, citing to Exhibit 2 of Ambrosh's affidavit. That letter indicates that the creditor is "CAPITAL ONE BANK USA NA" and asks Gillen to pay the outstanding debt "using either the pre-addressed envelope enclosed or our payment website, www.kohnlawpayment.com." (Ambrosh Aff. Ex. 2 (dkt. #31-2).) There is nothing false or misleading about that statement. The letter makes clear that Capital One was the creditor and that, should Gillen fail to pay, "[Kohn's] *client* may consider additional remedies to recover the balance due." (*Id.* (emphasis added).) These statements are in no way deceptive or misleading, even to an unsophisticated consumer. *See Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009) (summary judgment appropriate when statements "plainly, on their face, are not misleading or deceptive").

*Second*, he avers that Kohn's original dunning letter falsely represented that a communication was from an attorney, because it appears on law-firm letterhead but indicates that no attorney has reviewed the matter. (*See* Gillen Aff. (dkt. #46) ¶ 8; Compl. Ex. A (dkt. #2-1) 1.) This, too, is incorrect. The dunning letter is indeed printed on Kohn's letterhead, but states only that "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of this matter." This statement says

6

nothing about who sent the *letter*, only that an attorney has not yet reviewed the specifics of the debt. In any event, the evidence is that an attorney *did* send the letter, and Gillen offers no evidence to the contrary.

*Third*, Gillen avers that Kohn threatened to take unspecified "further action" if Gillen did not pay Kohn, without providing the required validation. (Gillen Aff. (dkt. #46) ¶ 89.) As will be discussed below, however, the undisputed facts are that Kohn *did* provide validation.

*Fourth*, Gillen avers that Kohn failed to communicate in the state court lawsuit that the debt was disputed, citing to the complaint Kohn filed in that action. (*Id*. at ¶ 10; *see also* Ex. 1 (dkt. #47).) While that complaint makes no mention of the fact that Gillen disputed the debt, § 1692e(8) actually makes unlawful "[c]ommunicating or threatening to communicate to any person *credit information* which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8) (emphasis added). Courts generally interpret this provision to mean that if a debt collector communicates a consumer's credit history information to a credit reporting agency, it may not omit the fact that the consumer has disputed a debt. *See, e.g., Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008); *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998); *see also* FTC Staff Commentary, 53 Fed. Reg. 50097-02, 50106 (Dec. 13, 1988) ("If a debt collector knows that a debt is disputed by the consumer[] . . . and *reports it to a credit bureau*, he must report it as disputed.") (interpreting § 1692e(8)) (emphasis added)).

There is no consensus as to whether the failure to communicate that the debt was disputed in the state court petition presents an actionable FDCPA violation in the first

instance, although this court has its doubts in light of the above. *Compare Hollis v. Stephen Bruce & Assocs.*, No. CIV-07-131-C, 2007 WL 4287623, at *4 (W.D. Okla. Dec. 5, 2007) ("[I]f Plaintiff proves that credit reporting agencies do monitor collection lawsuits for credit history and delinquent account information, then that omission indirectly communicated potentially misleading credit information."), *with Gough v. Bernhardt & Strawser, PA*, No. 1:05CV00398, 2006 WL 1875327, at *5 (M.D.N.C. June 30, 2006) (no claim under § 1692e(8) where defendant did not state that debt was disputed in state court petition but where plaintiff did not allege defendant communicated information about his *credit history* to anyone). While the court finds those decisions holding that a petition filed in good faith in state court alleging a debt is owed is not an actionable FDCPA violation to be persuasive, the court need not decide that question here, since Gillen failed to plead this violation adequately in his complaint.

*Fifth*, Gillen avers that Kohn tried to collect unauthorized amounts based on its letters requiring that Gillen pay Kohn. As already discussed above, however, Kohn expressly disclosed that it was collecting those amounts on behalf of Capital One, its client, undermining this argument. The remainder of Gillen's affidavit seeks to explain his claims that Kohn did not verify the debt and lacked a permissible purpose in obtaining his credit report, discussed further below.

### B. Failure to Validate Debt Before Continuing Collection Activities

The one exception to the general deficiency of Gillen's FDCPA "count" is his cause of action under § 1692g(b), which provides in relevant part:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that

> the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). While conceding that Gillen has pled sufficient facts to survive the motion-to-dismiss standard on this claim, Kohn argues that the undisputed facts show that it *did* provide the requested verification before resuming its collection activities, in the form of the credit card statements it sent with its letter of March 14, 2013. The court agrees.

The verification requirement of § 1692g(b) "is only intended to 'eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (quoting S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699). Thus, courts have generally held that a debt collector satisfies the verification requirement by providing information like the name of the creditor and the amount owed. *See, e.g.*, *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173-74 (9th Cir. 2006) ("At the minimum, 'verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is owed.'"); *Chaudhry*, 174 F.3d at 406 (debt collector complied by forwarding a copy of the bank's computerized summary of loan transactions, including "a running account of the debt amount, a description of every transaction, and the date on which the transaction occurred"); *Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1203 (9th Cir. 1999) (debt collector complied by contacting creditor, verifying nature and unpaid balance, and conveying that information to debtor "along with an itemized statement of the account"); *Graziano v.*

*Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) (debt collector complied by providing computer printouts "sufficient to inform [plaintiff] of the amounts of his debts, the services provided, and the dates on which the debts were incurred"); *Poulin v. The Thomas Agency*, 760 F. Supp. 2d 151, 160-161 (D. Me. 2011) (debt collector complied by providing name of the original creditor, informing plaintiff balance had been determined to be true, correct and owing, and forwarding a copy of the statement); *Monsewicz v. Unterberg & Assocs., P.C.*, No. 1:03-CV-01062JDTTAB, 2005 WL 756433, at *5 (S.D. Ind. Jan. 25, 2005) (debt collector complied by providing "a printout of the mortgage loan history reflecting the beginning principal, the dates on which payments were made, the amounts received, and the ending principal balance, as well as copies of the mortgage, the note, and the assignment of security instrument"). In fact, as the *Poulin* court noted, "it appears as though every court to have examined the issue has held that the verification provided here – confirmation of the amount of the debt and the identity of the creditor, which is then relayed to the debtor – is sufficient." *Poulin*, 760 F. Supp. 2d at 159.

Given the above authority, Kohn more than meets its obligation to verify the debt in response to Gillen's letter. Indeed, it provided detailed itemized statements pertaining to Gillen's Capital One account from October of 2009 until January 10, 2013. The statements reflected the name of the creditor -- Capital One -- and provided the source and amount of the debt. Under the flexible standards that other courts employ, Kohn not only complied with *its* obligation to confirm that the amount demanded was the same as what the creditor, Capital One, was actually owed, but provided detailed source documents so that Gillen could do the same.

Gillen nevertheless attacks the verification Kohn provided for two reasons. First, he argues that Kohn failed to provide documents demonstrating Kohn had the right to collect on the debt. This argument is a non-starter: the court has found no authority suggesting that the verification requirement of § 1692g(b) *also* requires Kohn to provide documentation of its own relationship to the debt (and at any rate, Kohn had already indicated in its initial letter that Capital One had retained it to collect the debt in question). Second, Gillen argues that certain pages in the statements were missing from the copies he received. Even if true, this fact is not material. No case of which this court is aware holds that a debt collector must provide every single statement connected with an account to verify a debt; to the contrary, courts generally hold that § 1692g(b) "is not intended to give a debtor a detailed accounting of the debt to be collected." *Poutin*, 760 F. Supp. 2d at 160. Accordingly, Kohn is entitled to summary judgment on this claim.

## II. Fair Credit Reporting Act

Gillen also alleges that Kohn violated the FCRA by obtaining his credit report for an impermissible purpose. Under the FCRA, "[a] person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification." 15 U.S.C. § 1681b(f). Gillen does not appear to challenge the certification requirement of § 1681b(f), nor does he provide a factual basis to do so. Instead, he argues that Kohn did not obtain his credit report for a permissible purpose.

Kohn initially argues that the FCRA does not apply to it because it is not a consumer reporting agency. This is a non-starter. As Gillen points out, § 1681b(f) applies on its face to *any* person who "use[s] or obtain[s] a consumer report." Kohn's silence in its reply suggests agreement, and the court need not address this argument further.

Kohn's second argument, however, finds purchase. It has submitted uncontroverted evidence that its purpose in obtaining Gillen's credit report was to collect on his delinquent credit card account. Many courts, including the District Court for the Eastern District of Wisconsin, have held that "obtaining a person's consumer report in the course of attempting to collect the person's debt is considered a permissible purpose under the FCRA." *Smith v. Encore Capital Grp. Inc.*, 966 F. Supp. 2d 817, 823 (E.D. Wis. 2013) (collecting cases); *see also, e.g.*, *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011); *Miller v. Wolpoff & Abramson, LLP,* 309 F. App'x 40, 43 (7th Cir. 2009); *McNall v. Credit Bureau of Josephine Cnty.*, 689 F. Supp. 2d 1265, 1273 (D. Or. 2010). Support for this holding is found in 15 U.S.C. § 1681b(a)(3)(A), which makes it permissible to furnish a credit report to a person that "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, *or review or collection of an account of*, the consumer." *Id.* (emphasis added).

Gillen does not really contest that obtaining a consumer report in order to collect on a debt is a "permissible purpose" under § 1681b(a)(3)(A). Rather, he argues that Kohn was required to have a "direct consumer relationship" with him as a sort of threshold requirement before its purpose can be considered permissible. (*See* Pl.'s Br. Opp'n (dkt. #44) ¶ 17.) To support this proposition, he cites *Houghton v. N.J. Mfrs. Ins. Co.*, 795 F.2d

1144, 1149 (3d Cir. 1986). In *Houghton,* the Third Circuit analyzed an older version of § 1681b, which permitted a consumer reporting agency to furnish a consumer report to a person having a "legitimate business need for the information in connection with a business transaction involving the consumer." 15 U.S.C. § 1681b(3)(E) (1994). The *Houghton* court held that the term "business transaction" did not encompass "mere potential liability under an insurance policy," but instead had to "relate to one of the other specifically enumerated transactions in §§ 1681a(d) and b(3), *i.e.*, credit, insurance eligibility, employment, or licensing." 795 F.2d at 1149. In that context, the court then held that "a consumer relationship must exist between the party requesting the report and the subject of the report." *Id.* Gillen reads *Houghton* to mean that there must be a *direct* relationship between the consumer and the requester.

The problem with Gillen's argument (even assuming that his reading of is *Houghton* is correct, which the court need not and does not decide) is that Kohn does not rely on the broad language of § 1681b(a)(3)(F) (which is the current form of the provision the *Houghton* court analyzed). Instead, it relies on § 1681b(a)(3)(A), which requires only that Kohn intend to use the information "in connection with a credit transaction" involving Gillen and "involving the . . . collection of an account of[] the consumer." Consistent with this language, courts have concluded that § 1681b(a)(3)(A) does *not* require a "direct consumer relationship" between the party requesting the report and the consumer. In *Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043 (7th Cir. 2005), for example, the Seventh Circuit held that a third-party lender, First Midwest, did not violate the FCRA by requesting the consumers' credit reports to decide whether to purchase the consumers' potential loans from their car dealers:

13

> Stergiopoulos and Castro initiated the credit transactions at the car dealerships by requesting financing. While they did not know that First Midwest in particular was going to request their credit reports, they were aware that the transactions contemplated sale of the [potential loan] to a third party, and the statute does not require that consumers expressly approve each request for a report. The use of the word "involved" implies that the entity obtaining the credit report may not have a predicate credit transaction with the consumer directly; instead, on its face, the provision merely requires that the entity must be engaged in a credit transaction in which the consumer is participating.

*Stergiopoulos*, 427 F.3d at 1046-47. While the present case involves debt collection, not third-party financing, *Stergiopoulos* stands for the proposition that no direct relationship need exist between an entity requesting a consumer's credit report and a consumer under § 1681b(a)(3)(A).

In light of *Stergiopoulos* and the wealth of authority indicating that a debt collector may obtain a credit report to collect on a debt, the court agrees with Kohn that no reasonable jury could find Kohn violated the FCRA by obtaining Gillen's credit report in connection with its collection efforts. *See, e.g.*, *Huertas*, 641 F.3d at 34; *Miller v. Wolpoff & Abramson, LLP*, No. 1:06-CV-207-TS, 2007 WL 2694607, at *11 (N.D. Ind. Sep. 7, 2007) (no FCRA violation where entity obtained copies of credit report "in connection with its collection efforts"), *aff'd*, 309 F. App'x 40 (7th Cir. 2009). Thus, Kohn is entitled to summary judgment on his claim under the FCRA as well.

## III. Wisconsin Consumer Act

Finally, Kohn moves for summary judgment on any claims Gillen has under the WCA. As discussed above, Gillen has only pled facts relating to two discrete claims: (1) failure to provide requested verification before continuing collection efforts; and (2)

acquisition of his credit report for an impermissible purpose. Having rejected both factual assertions above, based on the uncontroverted evidence that Kohn verified the debt as requested and had a permissible purpose in obtaining Gillen's report, Kohn is necessarily entitled to summary judgment on Gillen's WCA claims as well. In particular, the facts of record would not permit a reasonable jury to find that Kohn violated Wis. Stat. § 427.104(1)(f) by attempting to collect "a disputed and unproven debt" or Wis. Stat. § 427.104(1)(h) (which actually deals with threatening or harassing conduct) by failing to "validate the character, legal status, or amount of the alleged debt."

To the extent that Gillen intended to bring additional WCA claims premised on conduct for which he plead no supporting facts, the court has already explained that the is too late under Fed. R. Civ. P. 12. Even overlooking that problem, Gillen again fails to present *any* evidence that Kohn filed a civil action "with knowledge or reason to know that the information used to bring said action was disputed and false," or that Kohn took action to collect on a debt when "they knew or should have known that the right to collect the alleged debt did not exist." (*See* Pl.'s Resp. DPFOF (dkt. #45) ¶¶ 21-22.)

Though Gillen purports to dispute Ambrosh's sworn, albeit conclusory, statements, he presents only his own affidavit as evidence, in which he again faults Kohn for failing to provide verification and for failing to prove that Kohn (as opposed to Capital One) had a right to payment. The court has already discussed why those claims fail above and need not repeat the discussion, nor need it address whether they are barred in the alternative by the *Rooker-Feldman* doctrine. In any event, Gillen fails to come forward with evidence supporting his claims, which was *his* burden on summary judgment.

ORDER

IT IS ORDERED that defendant Kohn Law Firm S.C.'s motion for summary judgment (dkt. #28) is GRANTED. The clerk of court is directed to enter judgment and close this case.

Entered this 26th day of March, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge